UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JARYN L. BURKE,

                      Plaintiff,

v.                                                   5:16-CV-1004
                                                            (WBC)
COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

APPEARANCES:                                        OF COUNSEL:

OLINSKY LAW GROUP                     HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State St., Ste. 300
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.         LAUREN E. MYERS, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II
  Counsel for Defendant
26 Federal Plaza – Room 3904
New York, NY 10278

William B. Mitchell Carter, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

      This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1 and the consent of the parties. (Dkt. Nos. 4, 12).

      Currently before the Court, in this Social Security action filed by Jaryn L. Burke ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 9, 10.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted.

I. RELEVANT BACKGROUND

A. Factual Background

Plaintiff was born in 1980. (T. 114.) She completed high school. (T. 231.) Generally, Plaintiff's alleged disability consists of reflex sympathetic dystrophy/knee injury. (T. 230.) Her alleged disability onset date is December 28, 2012. (T. 115.) Her date last insured is March 31, 2018. (T. 23.)[1] She previously worked as a licensed practical nurse ("LPN") and in the fast food industry. (T. 231.)

B. Procedural History

On October 29, 2013, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II of the Social Security Act. (T. 121.) Plaintiff's application was initially denied, after which she timely requested a hearing before an Administrative Law Judge ("the ALJ"). On June 25, 2015, and again on February 19, 2015, Plaintiff appeared before the ALJ, Joseph L. Brinkley. (T. 50-79, 80-113.) On August 7, 2015, ALJ Brinkley issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 18-38.) On June 16, 2016, the Appeals Council ("AC") denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner. (T. 1-6.) Thereafter, Plaintiff timely sought judicial review in this Court.

C. The ALJ's Decision

Generally, in his decision, the ALJ made the following five findings of fact and conclusions of law. (T. 23-35.) First, the ALJ found that Plaintiff met the insured status

---

[1] Elsewhere in the record Plaintiff's date last insured is listed as December 31, 2017. (T. 114.) The parties do not dispute the ALJ's finding of March 31, 2018.

requirements through March 31, 2018 and Plaintiff had not engaged in substantial gainful activity since December 28, 2012. (T. 23.) Second, the ALJ found that Plaintiff had the severe impairments of right knee degenerative joint disease with history of arthroscopy, reflex sympathetic dystrophy ("RSD") of the right lower extremity, and obesity. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 24.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work. (T. 24.)[2] The ALJ found that Plaintiff could occasionally use her dominant right lower extremity to repetitively operate foot and leg controls; could occasionally balance, kneel, stoop, and climb stairs and ramps; could never crawl, crouch, or climb ropes/ladders/scaffolding; must avoid concentrated exposure to extreme hot and cold temperatures, wetness, and vibrations; and must avoid concentrated exposure to workplace hazards such as dangerous machinery, unprotected heights, and uneven terrain. (*Id.*) Fifth, the ALJ determined that Plaintiff was incapable of performing her past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 34-35.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[2] Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. 20 C.F.R. § 404.1567(a).

Plaintiff makes two separate arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues the RFC determination was not supported by substantial evidence because the ALJ erred in evaluating the opinion evidence and failed to fully and fairly develop the record. (Dkt. No. 9 at 8-12 [Pl.'s Mem. of Law].) Second, and lastly, Plaintiff argues the step five determination was not supported by substantial evidence. (*Id.* at 12-13.)

### B. Defendant's Arguments

In response, Defendant makes two arguments. First, Defendant argues substantial evidence supported the ALJ's RFC finding. (Dkt. No. 10 at 5-10 [Def.'s Mem. of Law].) Second, and lastly, Defendant argues the step five determination was supported by substantial evidence. (*Id.* at 10-12.)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct

legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.     Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §

404.1520. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a 'residual functional capacity' assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin,* 758 F.3d 146, 150 (2d Cir. 2014).

**IV. ANALYSIS**

**A. The ALJ's RFC Determination**

The RFC is an assessment of "the most [Plaintiff] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). In formulating an RFC an ALJ will base his determination on "all of the relevant medical and other evidence" in the record. *Id.* at § 404.1545(a)(3).

The opinion of a treating source will be given controlling weight if it "is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2)[3]; *see Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015).

---

[3] Effective March 27, 2017, 20 C.F.R. § 404.1527 has been amended, as have other regulations and SSRs cited herein. Nonetheless, because Plaintiff's social security application was filed before the new regulations and SSRs went into effect, the Court reviews the ALJ's decision under the earlier regulations and SSRs.

The following factors must be considered by the ALJ when deciding how much weight the opinion should receive, even if the treating source is not given controlling weight: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist." 20 C.F.R. § 404.1527(c)(2)(i)-(iv). The ALJ is required to set forth his reasons for the weight he assigns to the treating physician's opinion. *Id.*, *see also* SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000) (quoting *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir.1998)).

Plaintiff received orthopedic care from John Cannizzaro, M.D., Daniel Demartini, P.A., and Matthew Brunett, P.A. The record also contained independent medical examinations performed by William Ferraraccio, M.D. in connection with Plaintiff's Worker's Compensation claim.

None of the medical sources provided a medical source statement outlining Plaintiff's work related functional abilities; however, the record contained statements that Plaintiff was unable to work or was disabled. For example, in a March 2013 treatment notation, Dr. Cannizzaro noted Plaintiff was "unable to work." (T. 293.) Dr. Cannizzaro noted on July 30, 2013, Plaintiff was "100% disabled." (T. 300.) Mr. Demartini noted Plaintiff was "temporarily markedly disabled at 75%." (T. 289.) Dr. Ferraraccio noted on July 24, 2013, Plaintiff had a "marked level of temporary partial disability." (T. 28.)

The ALJ afforded "no weight" to Dr. Cannizzaro's March 2013 statement that Plaintiff was "unable to work." (T. 27.) The ALJ reasoned the comment was an opinion

7

on the question of disability which was reserved to the Commissioner. (T. 27.) The ALJ also reasoned that it was unclear from the treatment notations whether or not Dr. Cannizzaro was providing an opinion or recording Plaintiff's statement that she was unable to work, the duration of the opinion was unclear, and the statement was made during Plaintiff's first visit, suggesting a very short treating relationship. (*Id.*)

Plaintiff argues that the ALJ erred in his evaluation of Dr. Cannizzaro's March 2013 statement. (Dkt. No. 9 at 9-11 [Pl.'s Mem. of Law].) Contrary to Plaintiff's contention, the ALJ did not err in affording the March 2013 statement, that Plaintiff was "unable to work," no weight.

The ultimate finding of whether a plaintiff is disabled and cannot work is "reserved to the Commissioner." 20 C.F.R. § 404.1527(d); *see LaValley v. Colvin*, 672 F. App'x 129, 130 (2d Cir. 2017) (whether a plaintiff qualifies as disabled under the statute is a decision reserved to the ALJ); *see Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999) (a treating physician's statement that a plaintiff is disabled cannot itself be determinative); *see Taylor v. Barnhart*, 83 F. App'x 347, 349 (2d Cir. 2003) (a doctor's opinion that plaintiff was 'temporarily totally disabled' was not entitled to any weight, since the ultimate issue of disability is reserved for the ALJ and therefore the ALJ did not commit error in not affording treating source controlling weight); *Barringer v. Comm'r of Soc. Sec.*, 358 F. Supp. 2d 67, 80 (N.D.N.Y. 2005) (ALJ did not err in his decision not to accord treating physician's opinion plaintiff was totally disabled controlling weight). Therefore, the ALJ did not err in affording Dr. Cannizzaro's opinion that Plaintiff was "unable to work" no weight, because a doctor's opinion regarding a plaintiff's disability is not binding on the ALJ.

Plaintiff argues that the ALJ did not properly consider the factors outlined in 20 C.F.R. § 404.1527 in evaluating the March 2013 statement. (Dkt. No. 9 at 10 [Pl.'s Mem. of Law].) First, the ALJ did apply the factors in evaluating the March 2013 statement. The ALJ acknowledged Dr. Cannizzaro was a treating source; however, at the time he made the statement he had only examined Plaintiff on one occasion. (T. 27.) The ALJ also indicated that it was unclear whether the doctor was providing an opinion or noting Plaintiff's complaint. (*Id.*) The ALJ indicated that the statement contained no duration. (*Id.*) Second, any error would be harmless because, for the reasons stated above, a doctor's opinion regarding the ultimate disability of a plaintiff is not binding on the ALJ.

Plaintiff also makes the conclusory argument that Dr. Ferraraccio's opinions should have been afforded "at least some weight." (Dkt. No. 9 at 11 [Pl.'s Mem. of Law].) First, Dr. Ferraraccio, like Dr. Cannizzaro, provided opinions regarding Plaintiff's disability. For example, the doctor opined on July 24, 2013, that Plaintiff had a "marked level of casually related temporal partial disability." (T. 307.) Therefore, Dr. Ferraraccio's July 2013 opinion was not binding on the ALJ's determination.

Second, the ALJ afforded "little weight" to Dr. Ferraraccio's October 2013 opinion which is consistent with Plaintiff's assertion that the ALJ should have afforded his opinion "at least some weight." (T. 32.) On October 23, 2013, Dr. Ferraraccio opined Plaintiff had "[l]ight duty work restrictions would be strictly sedentary work with essentially no [weight bearing] either walking or standing, no climbing of stairs or ladders and no squatting or kneeling" and disability was at the "75% level." (T. 310.) The ALJ limited Plaintiff to sedentary work with no climbing of ropes/ladders/scaffolds.

9

(T. 24.)  Although the ALJ determined Plaintiff could occasionally kneel and climb stairs, any error to specifically include Dr. Ferraraccio's kneeling, squatting, and climbing limitations was harmless.  The occupations provided by the vocational expert ("VE"), based on the ALJ's RFC hypothetical, do not require climbing, balancing, stooping, kneeling, crouching, or crawling.  (DOT 249.587-018, DOT 237.367-046, DOT 219.587-010.)  Therefore, any error to specifically include those limitations was harmless.  Overall, the ALJ afforded Dr. Ferraraccio's work limitations little weight and the ALJ's RFC determination was consistent, in large part, with the doctor's opinion.

Plaintiff argues that the ALJ failed to recontact Plaintiff's treating sources for clarification and failed to order a consultative examination to fully assess Plaintiff's limitations.  (Dkt. No. 9 at 12 [Pl.'s Mem. of Law].)  To be sure, the ALJ is under an affirmative duty to "make every reasonable effort" to develop the record.  20 C.F.R. § 404.1512(d).  Moreover, an ALJ has an independent duty to make reasonable efforts to obtain a report prepared by a plaintiff's treating physician, including an assessment of the plaintiff's functional capacity, in order to afford the claimant a full and fair hearing.  *See Smith v. Astrue*, 896 F. Supp. 2d. 163, 176 (N.D.N.Y. 2012).  However, reviewing courts have held that ALJs are not required to seek additional information absent "obvious gaps" that preclude an informed decision.  *Rosa v. Callahan,* 168 F.3d 72, 79 n. 5 (2d Cir. 1999); *see also Hart v. Comm'r of Soc. Sec.,* 5:07-CV-1270, 2010 WL 2817479, at *5 (N.D.N.Y. July 10, 2012).  While there are no medical source statements from Plaintiff's physicians, the ALJ nevertheless fulfilled his duty to develop the record by obtaining Plaintiff's complete medical history.  *See Lowry v. Astrue*, 474 F. App'x. 801, 804 (2d Cir. 2012) ("Although an ALJ has an affirmative duty to develop the

administrative record ..., where there are no obvious gaps in the administrative record, and where the ALJ already possesses a complete medical history, the ALJ is under no obligation to seek additional information in advance of rejecting a benefits claim") (internal citations omitted).

In addition, the relevant Regulations stipulate that a consultative examination is ordered at the Administration's request, on an individual case basis, and when appropriate. *See* 20 C.F.R. § 404.1519; *see also Id.* at § 404.1517. If the evidence in the record is sufficient to render a decision on the plaintiff's disability, an ALJ is not required to order a consultative examination. *See Id.* at § 404.1517; see *Kameisha v. Colvin*, 100 F. Supp. 3d 200, 208 (N.D.N.Y. 2015). Here, the ALJ did not commit error by failing to order a consultative examination because the evidence in the record was sufficient to formulate an RFC.

Overall, the ALJ properly assessed the medical opinion evidence in the record. Plaintiff's treating sources provided opinions regarding Plaintiff's disability, which under the Regulations is a determination left to the Commissioner. Therefore, the ALJ did not err in affording Dr. Cannizzaro's statements that Plaintiff was "unable to work" no weight. The ALJ also did not err in his evaluation of Dr. Ferraraccio's statements that Plaintiff was disabled and the doctor's specific limitations were afforded some weight and considered in formulating the RFC determination.

Plaintiff further argues that the ALJ's RFC determination was not supported by substantial evidence in the record because the ALJ rejected the opinions of Plaintiff's treating sources and there was no other medical opinion in the record upon which the ALJ could base his RFC determination. (Dkt. No. 9 at 11 [Pl.'s Mem. of Law].) An

ALJ's RFC determination may be supported by substantial evidence even where the ALJ rejected a specific medical opinion. The Second Circuit has held that where, "the record contains sufficient evidence from which an ALJ can assess the [plainitff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required". *Monroe v. Comm'r of Soc. Sec.,* 676 F. App'x 5, 8 (2d Cir. 2017) (internal quotations and citation omitted).

      The ALJ relied on the evidence in the record as a whole in concluding that Plaintiff could perform less than a full range of sedentary work. (T. 33.) For example, the ALJ considered medical evidence in the record which showed that on examination Plaintiff's right knee had hypersensitivity, pain with range of motion, crepitus, mild atrophy, and intermittent disturbances in gait; however, the evidence also indicated that Plaintiff often had a "good" gait and good range of motion. (T. 289, 290, 291, 293, 294, 299, 300, 302, 306, 308, 321, 326, 330, 369, 371, 374, 376, 378.) The ALJ considered Plaintiff's treatment modalities, such as physical therapy, home exercises, weight loss, over the counter medication, and some injections. (T. 290, 382.) The ALJ considered Plaintiff's testimony, which aligned with the demands of sedentary work. Plaintiff consistently reported her knee pain increased when using stairs and walking for prolonged periods. (T. 283, 290, 291, 308.) Plaintiff testified that she could lift up to ten pounds. (T. 96.) In her activities of daily living report Plaintiff indicated that she could not sit on the floor or in "low seating." (T. 244.) Plaintiff reported that she could drive a car and could attend school part time. (T. 89.) Therefore, the record as a whole supported the ALJ's RFC determination. *See Johnson v. Colvin*, 669 F. App'x 44, 47 (2d Cir. 2016) (substantial evidence supported ALJ's RFC determination where the ALJ

relied on a "variety of evidence" in the record, including medical treatment notations and plaintiff's testimony).

### B. The ALJ's Step Five Determination

At step five in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering his physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. *See* 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); *Heckler v. Campbell,* 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983).

Plaintiff argues that the ALJ's step five determination was not supported by substantial evidence because it was based on an incomplete hypothetical to the VE. (Dkt. No. 9 at 12-13 [Pl.'s Mem. of Law].) Because the ALJ's RFC assessment was supported by substantial evidence, the ALJ did not err in posing a hypothetical question to the VE that was based on that assessment. *See Dumas v. Schweiker,* 712 F.2d 1545, 1553-1554 (2d Cir.1983) (approving a hypothetical question to a vocational expert that was based on substantial evidence in the record). Therefore, the ALJ's step five determination is upheld.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 9) is

    **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 10) is

    **GRANTED**; and it is further

**ORDERED** that Defendant's unfavorable determination is **AFFIRMED**; and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: August 29, 2017

_____
William B. Mitchell Carter
U.S. Magistrate Judge